1           IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF COLUMBIA

2   _____

3   National Security Archive, et  ) Civil Action
    al.,                        ) No. 1:20-cv-03500-KBJ

4                           )

5                Plaintiffs,  )
                           ) **Telephonic Status Conference**

6   vs.                      )

7   Donald J. Trump, et al.,     ) Washington, D.C.
                           ) December 7, 2020

8                Defendants.  ) Time:  11:00 a.m.
   _____

9          Transcript of **Telephonic Status Conference**
                    Held Before

10  The Honorable Ketanji Brown Jackson (via telephone)
              United States District Judge

11  _____

12              A P P E A R A N C E S

13  For the Plaintiffs:     **Anne L. Weismann**
    (via telephone)       CITIZENS FOR RESPONSIBILITY AND

14                       ETHICS IN WASHINGTON
                       6117 Durbin Road

15                       Bethesda, Maryland 20817
                       weismann.anne@gmail.com

16

17                       **Nikhel Sus**
                       CITIZENS FOR RESPONSIBILITY AND
                       ETHICS IN WASHINGTON

18                       1101 K Street, Northwest, Suite 201
                       Washington, D.C. 20005

19                       nsus@citizensforethics.org

20  For the Defendants:     **Elizabeth J. Shapiro**
    (via telephone)       **Julia A. Heiman**

21                       U.S. DEPARTMENT OF JUSTICE
                       Civil Division, Federal Programs Branch

22                       1100 L Street, Northwest
                       Washington, D.C. 20530

23                       elizabeth.shapiro@usdoj.gov

24

25

Stenographic Official Court Reporter:
(via telephone)          Nancy J. Meyer
                         Registered Diplomate Reporter
                         Certified Realtime Reporter
                         United States Courthouse, Room 6509
                         333 Constitution Avenue, Northwest
                         Washington, D.C. 20001
                         202-354-3118

### **P R O C E E D I N G S**

(REPORTER'S NOTE:  This hearing was held during the COVID-19 pandemic restrictions and is subject to the limitations of technology associated with the use of technology, including but not limited to telephone and video signal interference, static, signal interruptions, and other restrictions and limitations associated with remote court reporting via telephone, speakerphone, and/or videoconferencing.)

THE COURT:  Good morning.  This is Ketanji Jackson.

I understand that all of the parties are on the line.

Do we have Ms. Franklin?

THE COURT REPORTER:  No, Judge.  She's not on the line today.

THE COURT:  Okay.  Thank you very much.  Just wanting to make sure whether I need to call the case.  So let me do that.

This is a telephonic scheduling call in Civil Case No. 20-cv-3500, National Security Archive v. Trump.  We do have our court reporter who is recording this teleconference.

So let me start by having the parties please introduce themselves to the Court, beginning with the plaintiffs.

```
 1              MS. WEISMANN:  Good morning, Your Honor.  This is
 2     Anne Weismann on behalf of the plaintiffs, and also with me
 3     today is my co-counsel Nikhel Sus.
 4              THE COURT:  Good morning.
 5          Defense counsel, please.
 6              MS. SHAPIRO:  Yes.  Good morning, Your Honor.  This
 7     is Elizabeth Shapiro from the Department of Justice, and with
 8     me is co-counsel Julia Heiman.
 9              THE COURT:  Good morning to you-all as well.
10          We are proceeding by teleconference primarily due to the
11     court's closure status, in general, as a result of the pandemic
12     emergency, although it is my ordinary practice to schedule a
13     conference call that pertains to a motion for a temporary
14     restraining order.
15          In this case, we have a TRO that has come in.
16     Plaintiffs filed it on Friday afternoon, and the case itself
17     was brought a week ago today.  Let me start, as I ordinarily
18     do, with respect to these kinds of matters, which is by
19     attempting to assess whether and to what extent the issues
20     involved present a true emergency, such that there really is no
21     time for briefing or thorough consideration of the matter prior
22     to the Court's imposing some kind of injunctive relief.  And,
23     of course, that evaluation relates to the nature of the claims,
24     to the alleged claim, and it also pertains to the timing of the
25     plaintiffs' motion relative to known facts that give rise to
```

1     their claims.

2          So I have reviewed the complaint and the TRO.  Based on

3     the allegations that are being made, I do have some questions

4     about the urgency of the plaintiffs' claim in terms of -- of

5     treating this as a TRO.  Let me just put on the table at least

6     my initial impression, and then I'll turn it over to

7     plaintiffs.

8          For example, it appears as though the White House's

9     screenshotting policy, which seems to be at the heart of what

10    the plaintiffs are complaining about, that policy has been in

11    effect since 2017, and it, at least from the allegations, was

12    clear as of March of 2019 that White House officials, and in

13    particular Jared Kushner, was using the WhatsApp app to create

14    or send presidential records and that he was preserving such

15    documents via the screenshotting policy.  So what I need to

16    understand is why this motion is being filed now on an

17    emergency basis, and, of course, as I said, the answer to that

18    question has implications for the schedule moving forward.

19         So, Ms. Weismann, maybe I'll start with you and ask

20    whether there are facts that you're aware of that indicate a

21    recent change of policy concerning the handling or maintenance

22    of White House records.

23         MS. WEISMANN:  Good morning, Your Honor.  This is

24    Anne Weismann.

25         Not specifically, but there is a changed circumstance

1    which really heightens the need for the relief we are

2    requesting and, that is, that in less than six and a half

3    weeks, President Trump will leave office, a new President will

4    come in, and all of the records of the Trump presidency will be

5    transferred to NARA for -- they will take over custody, control

6    over those records.  And the concern here is that a lot of the

7    missing data -- we believe missing data -- is not currently,

8    you know, in the confines of the White House.  A lot of it

9    resides with individuals who have used nonofficial messaging

10   apps like WhatsApp to conduct official business.

11        So I submit especially that the timing here is really

12   driven by the fact that we are on the verge of a new presidency

13   and that changes everything with respect to the status of and

14   control over the records of the Trump presidency.

15        THE COURT:  Except, Ms. Weismann, with all due

16   respect, it seems as though the circumstance that you're

17   indicating is actually more favorable to plaintiffs in the

18   sense that the circumstance is not that NARA will not have

19   access to the records.  In fact, you say that the circumstance

20   is that in six weeks they will take custody of them.  So,

21   again, I don't -- I'm not sure it is evident, at least to me,

22   why I'm dealing with this in the context of a TRO with respect

23   to practices that have been in place for years now.

24        I mean, the individuals you're talking about have been

25   preserving records or not pursuant to the White House policy

1    since, you know, 2019 at least.  So what is it about this

2    moment that makes it significant enough that the Court has to

3    intervene with, by the way, a very limited type of injunctive

4    relief?  I mean, a TRO is a 14-day kind of order.  And so I

5    just don't see where -- where the need for treating this with

6    that kind of urgency is coming from.

7            MS. WEISMANN:  Well, Your Honor, let me -- let me try

8    to explain a little -- a little better.

9            You're correct that as -- as -- on January 20th at noon,

10   NARA will be the official custodian of all of the records of

11   the Trump presidency.  The problem lies in the fact that if

12   those -- whatever records are not preserved will not be

13   transferred to NARA.  And that's really -- with respect to the

14   screenshotting policy, that's our concern.

15           By adopting an official policy that tells White House

16   employees if they use nonofficial messaging accounts to conduct

17   business, all they need to do is to capture -- is to create a

18   screenshot of the message and that's what will be the official

19   record that will go to NARA, you know, it means that all of the

20   valuable metadata, attachments, et cetera, as we've laid out in

21   our briefs, are not captured, and yet all of that material also

22   constitutes presidential records material that needs to be

23   preserved.

24           So our concern, Your Honor, is that on January 20th,

25   NARA won't have any of that data.

1          THE COURT:  Yes.  But that concern -- Ms. Weismann,

2     that concern, I would think, arose in February of 2017 when the

3     White House issued the memoranda that allowed for its employees

4     to preserve records in the way that you now claim is

5     inconsistent with the Presidential Records Act.

6          What's -- what's concerning to me is not necessarily the

7     substance of your claim.  I understand that you think that the

8     Presidential Records Act requires them to preserve that data in

9     a more significant way than just a screenshot.  My concern is

10    that that -- it became clear that the White House disagreed

11    with you in 2017.  And it seems as though rushing in 60 days

12    before the end of the administration to seek a TRO and to

13    prevent them from continuing to implement a policy that's been

14    in place for two-plus years now, it seems like this is not sort

15    of the right timing in terms of how to address this issue.

16          MS. WEISMANN:  Well, the problem that we see,

17    Your Honor, is that if we don't get this kind of immediate

18    relief and we continue to litigate this issue, on January 20th

19    our ability to get full relief without a decision of any policy

20    is essentially, you know, mooted because NARA won't have all of

21    the metadata, all of the attachments to these screenshots.

22          THE COURT:  I understand, but -- but isn't that --

23    wasn't that based into your decision to wait until now?  I -- I

24    mean, I appreciate that that might be a problem for you in

25    60 days, but you've known about the basis for this complaint

1    for two-plus years.  Let me --

2              MS. WEISMANN:  Well, Your Honor --

3              THE COURT:  Yes.  Go ahead.

4              MS. WEISMANN:  Okay.  I -- I would just point out --

5    I'll just point out that we -- we did write -- CREW wrote

6    several letters, one well over a month ago, to NARA, to the

7    White House, to Mr. Kushner, asking for assurances that they

8    would begin this policy, and they refused to provide those

9    assurances.

10         You know, yes, we wish that we had appreciated the

11   nature of this problem this -- this created earlier.  We did

12   not fully appreciate the -- the problem of what it meant for

13   purposes of presidential records until recently, and we acted

14   as promptly as we could.  And at this point, you know, we -- we

15   do say irreparable loss of records, and that is the sort of

16   textbook example of the kind of harm that the preservation

17   order we seek here is designed to prevent.

18              THE COURT:  All right.  So let me -- let me ask you

19   in a more granular way what activity of the White House are you

20   seeking to restrain?  And, again, this is not for the purpose

21   of -- of binding you with respect to -- with respect to the

22   claims you're making.  This is not a hearing on the substance.

23   I'm just trying to evaluate whether the Court has to move

24   quickly to prevent the kind of activities that you would like

25   to have restrained.

1        So what is it that you are asking the Court to do in

2    terms of the imposition of a TRO?

3            MS. WEISMANN:  Well, we're asking for several things,

4    Your Honor.  We're asking, first, the Court to order the

5    White House defendants to preserve all presidential records.

6        And the second thing we're asking is that as part of

7    that preservation, the White House is directed to get

8    possession of, so that it can preserve all of the metadata, the

9    attachments, all of the presidential record material that's

10   associated with these messages that were sent or received on

11   nonofficial accounts that until now have -- have been preserved

12   only as a screenshot.

13           THE COURT:  All right.  So with respect to the first

14   point, preserving all presidential records, that seems to me

15   like it's just a general follow-the-law kind of injunction

16   because the statute requires that the White House preserve all

17   presidential records.  So do you have a factual basis that

18   the -- other than this sort of notion that you believe

19   screenshots are not enough, is there some practice or policy of

20   the White House in particular, in addition to the

21   screenshotting policy, that you are asking the Court to prevent

22   the White House from engaging in at this time?

23           MS. WEISMANN:  Yes, Your Honor.  As spelled out in

24   our complaint, we are also challenging the failure of the

25   President and others acting at his direction to comply with the

1    notice requirements that the PRA imposes on him before he can

2    destroy any presidential records.  And it is our contention

3    that he has not complied with that, and as a result, we, the

4    public, all -- all of the plaintiffs, who are good government

5    groups and historians, face the risk of irreparably losing

6    valuable historical records.

7           THE COURT:  I understand the risk.  What I'm trying

8    to understand is what my order looks like if, you know -- the

9    order that you're requesting.  So you're also including then a

10   line about not -- or having to notify the archivists.  I don't

11   see that as a proposed order right now, so I'm trying to

12   understand.

13          MS. WEISMANN:  At this -- yeah, at this juncture we

14   have not -- we have not moved for a TRO that would be against

15   the archivists, because the archivists at this point do not

16   have possession and control of the records.  Obviously on

17   January 20th, whatever preservation order is in place, we would

18   want to send to the archivists.

19          THE COURT:  I'm sorry.  I wasn't clear.  I'm talking

20   about the notice point that you just made.  You say in your

21   complaint --

22          MS. WEISMANN:  Oh.

23          THE COURT:  -- you claim that the President will

24   not --

25          MS. WEISMANN:  I'm sorry.

1          THE COURT:  -- is not complying with the notice.  Is

2     that a part of the TRO or not?

3          MS. WEISMANN:  Yes, it is, Your Honor.  And I'm

4     sorry.  I -- I misunderstood the Court's point.

5          Yes, the TRO and our motion and our complaint complains

6     about the fact that the President has failed to comply with the

7     mandatory notice that the statute requires him to give to the

8     archivists before he destroys any presidential records.

9          THE COURT:  All right.  So would -- would your TRO be

10    mooted in a sense if the White House were to agree to just not

11    destroy anything moving forward?  Can we litigate this in the

12    ordinary fashion if you had those sorts of assurances?

13         MS. WEISMANN:  If they were advised in the Court

14    order, yes.  I'm still not sure that would address the

15    screenshotting issue, but as to the counts against the

16    President and EOP, with respect to their failure to give the

17    required notice, yes, that would go far enough.

18         THE COURT:  Why would that not address the

19    screenshotting issue?  I mean, if they're only now preserving

20    things by screenshot, if, instead, the White House said, you

21    know, even if we're screenshotting things, we're not going to

22    destroy anything, we'll just hold the electronic records, why

23    wouldn't that moot the TRO aspect of this?

24         MS. WEISMANN:  Because, at present, it's our

25    understanding that the White House, in fact, does not have all

1    of that associated metadata, attachments, et cetera.  All they

2    have in their records systems, all they have -- all that's been

3    preserved are the -- the screenshots.  And so there's still

4    very significant valuable data that qualifies, we submit, as a

5    presidential record material that is -- they don't have and

6    they're not preserving.  When I say "they," I mean EOP doesn't

7    have it in its record keeping system.

8            THE COURT:  Right.  But I guess I'm not being clear.

9        So if the White House were to agree to not destroy --

10   you're -- what -- I guess -- are you saying that that data

11   cannot be preserved or just that they're not doing so and they

12   can't agree to do so during the pendency of this litigation?

13           MS. WEISMANN:  I'm not saying it cannot be preserved.

14   I'm saying at this point I believe that a lot of the data

15   likely still resides with individual White House employees to

16   the extent that they have used phone -- their personal phones,

17   for example, to send WhatsApp messages, as we understand Jared

18   Kushner has.  All of that data, if it has not been forwarded to

19   the White House to be placed in an official record keeping

20   file, then it is still with Mr. Kushner.  And that would be

21   true for other White House employees as well.

22           THE COURT:  All right.  So let me turn to Ms. Shapiro

23   to ask about whether Ms. Weismann's representations concerning

24   records being in individual employee files and custody and not

25   in White House files and custody, is she right about that,

1    Ms. Shapiro?

2            MS. SHAPIRO:  Good morning, Your Honor.  This is

3    Elizabeth Shapiro.

4            I think we can make this much easier on the Court and on

5    everybody, because there are three very strong reasons why this

6    TRO needs to be denied.  And the first is that preservation

7    instructions were already conveyed to the White House before

8    plaintiffs ever filed their TRO.  A formal litigation hold went

9    to all components and individuals affected by this litigation,

10   and that's all individuals within the White House office, so

11   including Jared Kushner.

12           Every litigant is under a duty to preserve records.

13   We've already done that.  And there's absolutely no need for a

14   preservation order because we have complied with our litigation

15   obligations and issued an order after we got the complaint

16   and -- and were able to get that instruction and before the

17   TRO.

18           And plaintiffs would know that if they had conferred

19   with us on this motion, which brings me to the second point why

20   this motion has to be denied, which is because this motion for

21   preservation is really a nondispositive motion for preservation

22   that was subject to Local Rule 7(m).  Had they conferred with

23   us, the plaintiffs, they would have learned there was no need

24   to bring a motion, particularly an emergency motion, because

25   preservation measures are in place.

1          And, Your Honor, as -- as Your Honor well knows,

2     Your Honor's chamber rules make crystal clear any motion that

3     does not comply with Local 7(m) will be denied.  I think the

4     Court's exact words are:  The Court will summarily deny motions

5     that are subject to Local Civil Rule 7(m) but do not contain

6     the requisite statements, unquote.

7          And plaintiffs knew precisely with whom to confer about

8     this motion because they sent me a copy of their ready-to-file

9     motion on Friday at 11:30 in the morning.  They filed the TRO

10    nine minutes later.  I responded to Ms. Weismann at 12:30

11    saying I had received her email and I would get back to her

12    soon.  When I went on the docket, the TRO motion had already

13    been filed.  So there was no discussion before this motion was

14    prepared and filed, and -- and had there been, I think we could

15    have obviated the entire need to have this conversation.

16         But, in any event, the third reason why the motion

17    should be denied is because on its face the plaintiffs cannot

18    make out the elements of the TRO.  They cannot establish

19    irreparable harm because they claim that the harm flows from

20    the absence of a preservation order, but, in fact, preservation

21    instructions and measures are in place.

22         They are also unlikely to succeed on the merits of their

23    claim because, as they essentially recognize in their papers,

24    the *Armstrong* decision from the D.C. Circuit prevents this

25    Court from asserting jurisdiction over virtually all aspects of

1    PRA claims with very limited exceptions.  One of those claims

2    that are precluded are compliance claims.  So the notion that

3    there should be a TRO to enjoin the President from compliance

4    with the PRA is -- is not something that's within this Court's

5    jurisdiction to order.

6         So on -- the two most significant elements of the TRO

7    casts irreparable harm and likelihood of success on the merits,

8    plaintiffs cannot succeed on this motion.  But what we can do,

9    and what we would have told plaintiffs if they had conferred

10   with us, is that we are willing to enter into an expedited

11   briefing schedule to resolve this matter.  We're prepared to

12   file a motion to dismiss on the merits by December 15th, which

13   is, I think, eight days from now, so that we should be able

14   to quickly litigate and resolve this in advance of the

15   transition.

16        THE COURT:  All right.  Let me then turn it back to

17   Ms. Weismann.  Why shouldn't the Court proceed as defendants

18   have proposed, especially in light of the lack -- alleged lack

19   of plaintiffs having complied with the local rules concerning

20   consultation?

21        MS. WEISMANN:  First of all, at no time after we

22   filed our complaint, between that time and when we filed the

23   motion for TRO, did anyone from the government enter their

24   appearance, and so I very much take issue with the idea that we

25   have failed to comply with our notice requirements.

1          And I would also point out that as we said in our

2     papers, yes, this -- this motion could have been avoided had

3     the White House or NARA had the courtesy to respond to any of

4     our letters that we sent over the last month and a half asking

5     for precisely the kind of assurance that they now -- that

6     defendants now claim they're willing to give.

7          THE COURT:  All right.  Well, in light of their

8     representations that -- in light of their representations --

9          MS. WEISMANN:  Yes.

10         THE COURT:  -- that --

11         (Indiscernible simultaneous cross-talk.)

12         THE COURT:  What is your view of whether the motion

13    is still needed?

14         MS. WEISMANN:  Well, I think it still does not

15    address the concern I raised with respect to the data that has

16    not been preserved by the screenshots.  And so I still think

17    there is a need to address that component of it, because come

18    January 20th, all of those White House employees will no longer

19    be employees of the White House and no longer under the

20    direction of the White House Counsel and EOP.  And so we still

21    think that there needs to be --

22         THE COURT:  Ms. Weismann, what I understood defense

23    counsel to be representing is that at present the White House

24    has notified all such persons that they are not to destroy any

25    documents or any records, electronic or otherwise.  So that

1    right now the -- the data that you're concerned about is being

2    preserved.  Why doesn't that obviate the need for emergency

3    relief in the way that you have moved?

4         MS. WEISMANN:  If that is, in fact, the case, I would

5    agree that we don't need the emergency relief.  But in order to

6    be able to know that's the case, we would need to see the terms

7    of the preservation order because --

8         (Indiscernible simultaneous cross-talk.)

9         THE COURT:  I -- I take -- I take government counsel

10   at her word as an officer of the court that a litigation hold

11   preservation order has been issued.  I don't know whether or

12   not -- you know, I don't feel that it is necessary for the

13   Court to scrutinize the details of that to the extent that she

14   is representing, as has been represented in prior cases, by the

15   way, that the government is preserving this data and

16   information.  I'm not aware of a circumstance in which the

17   Court then says prove it before they determine whether or not

18   to proceed to litigate the claims in a less emergent fashion,

19   which is really all that I'm concerned about right now.

20        I'm trying to figure out the right schedule by which to

21   assess the claims that you've made in your complaint.

22   Defendant has said that there is a litigation hold that none of

23   the data -- that the data that you're concerned about is being

24   destroyed and that they're prepared to file a motion to dismiss

25   and litigate this, essentially, on expedited motions for

1    cross -- for summary judgment as of December 15th.

2         What is your view of that proposal?

3         MS. WEISMANN:  Your Honor, as long as it is clear --

4    and I apologize.  It's not clear to me that for purposes of

5    what they've ordered be preserved, it includes all -- a

6    complete copy of any electronic presidential records, and that

7    would include all of the metadata, attachments, and

8    functionality associated with the original record.  As long as

9    the preservation order expressly includes that information, we

10   would agree that there is no need to rule on an emergency

11   motion, but I did not hear that expressly from counsel.  And if

12   she said it, I apologize.

13        THE COURT:  Ms. Shapiro, is it the White House's

14   position they have ordered the preservation of all records and

15   data associated with those records in the manner that

16   Ms. Weismann indicates?

17        MS. SHAPIRO:  Yes, Your Honor.  This is Elizabeth

18   Shapiro.

19        The litigation hold, which is privileged -- but I can

20   represent that it directs individuals to maintain the record in

21   its original form, in its native format with all the

22   functionality.

23        THE COURT:  All right.  So, Ms. Weismann, given that,

24   do you want to withdraw your motion for a TRO?  Do you want the

25   Court to deny it as moot?

1     I think we should turn now to a discussion of the

2 schedule concerning the -- the claims that you've made in this

3 case.

4          MS. SHAPIRO:  So, Your Honor, this is -- I wasn't

5 sure who you were directing your question to, but we are

6 prepared, as I mentioned, to move to dismiss under Rule 12 by

7 December 15th.

8          THE COURT:  Yes.

9          MS. SHAPIRO:  And --

10          (Indiscernible simultaneous cross-talk.)

11          THE COURT:  Yes, I was trying to ask Ms. Weismann

12 whether in light of your representation now that everything has

13 been preserved, how -- how should the Court treat the pending

14 TRO.

15          MS. WEISMANN:  Your Honor --

16          THE COURT:  Happy to deny it as moot, or I can allow

17 you to withdraw it, and we can move into the briefing phase of

18 this.

19          MS. WEISMANN:  Your Honor, this is Anne Weismann.

20     I do have a further issue that needs to be addressed

21 and, that is, that we are facing the end of a -- of a

22 presidential term, which means that, as is starting to be

23 reported almost daily in the newspaper, employees will leave.

24 To the extent that employees have any of the, you know,

25 original form of these messages, including all of the metadata

1    and attachments, we want to make sure that those records are

2    placed in the custody of the White House before they leave.

3            THE COURT:  I -- I fully understand and appreciate

4    your interest.  I will ask Ms. Shapiro whether that is what the

5    arrangement that the White House has made, but I -- I do also

6    want to indicate my awareness that the D.C. Circuit has in this

7    area of presidential records issued many times rulings that

8    indicate that the Court has limited subject-matter

9    jurisdiction.

10           So just because the plaintiffs have brought this as an

11   emergency motion at the end of a presidential term and have

12   expressed what they believe to be legitimate concerns about the

13   presidential -- the preservation of records, doesn't permit

14   this Court to suddenly become a tribunal that can order the

15   President to do various things in this regard when the

16   D.C. Circuit has said that the Court has limited subject-matter

17   jurisdiction.

18           So I'm -- I'm happy to ask Ms. Shapiro in the context of

19   this call whether or not the instructions that the White House

20   has given include the instruction to individuals who might be

21   leaving to hand over all their records in the original form to

22   the White House.

23           Ms. Shapiro, is that happening or not?

24           MS. SHAPIRO:  So the litigation hold does not

25   expressly address what happens when employees leave, but there

1    are elaborate procedures when anybody leaves the White House

2    about their records.  So I have to imagine that all of that is

3    accounted for, particularly when these individuals are all now

4    subject to a litigation hold.

5         And, in any event, I agree that is not the appropriate

6    subject of an order.  But I'm certainly willing to work with

7    Ms. Weismann to make sure that, you know, she is satisfied with

8    those procedures; but there shouldn't be any doubt that the

9    office of records management is extremely vigilant about

10   managing departing employees' records, and they're aware of

11   this litigation hold.

12        THE COURT:  All right.  So we have on the table the

13   proposal that the defendants file a motion to dismiss as of

14   December 15th.  Let me get my calendar out.

15        Ms. Weismann, again, with respect to your existing TRO,

16   are you in a position now to say that you would like for it to

17   be withdrawn?  Do you want it converted into some sort of

18   motion for summary judgment?  How do you propose we proceed

19   from a procedural standpoint given the representations of

20   defense counsel?

21        MS. WEISMANN:  Your Honor, this is Anne Weismann.

22   Given the --

23        THE COURT:  Sorry.  I just got a little -- can you

24   try again.

25        MS. WEISMANN:  Can you hear me now?

1          THE COURT:  Yes.  Go ahead.

2          MS. WEISMANN:  Sorry.  Your Honor, Anne Weismann.

3      Given the representations of counsel and the

4  willingness -- their express willingness to work with us so

5  that we understand and are reassured about the procedures they

6  have in place to capture records of departing employees, we are

7  willing -- we can either withdraw our motion or the Court can

8  treat it as moot, and we are willing then to talk about

9  scheduling for a motion to dismiss.

10          THE COURT:  All right.  I'll enter a minute order

11  that denies the motion as moot in light of the representations

12  of defense counsel in the context of today's teleconference.

13  And given that, we would have the complaint.  The defendant is

14  seeking to file a motion to dismiss by next Tuesday.  The

15  question is should we just proceed in motion-to-dismiss world

16  given what I take defense counsel's primary argument, or at

17  least one of the arguments, will have to do with the Court's

18  subject-matter jurisdiction, which is certainly a threshold

19  consideration, or do we want to have some -- you know,

20  cross-motions for summary judgment?  How should we go about

21  evaluating the remaining claims?

22          MS. WEISMANN:  Well, Your Honor, this is

23  Anne Weismann.

24      Speaking for the plaintiffs, we wouldn't be in a

25  position to cross-move summary judgment because we wouldn't

1    have access to all of the facts we would need.

2              THE COURT:  All right.  So it sounds like then we

3    should have the -- just sort of processing what you just said

4    in terms of the facts that you would need.  So what sort of

5    facts do you need, Ms. Weismann?

6              MS. WEISMANN:  Well, we -- you know, if we proceeded

7    in the normal course, we would -- you know, we would be

8    entitled, I think, to certain discovery.  So we're not willing

9    to concede that there's no discovery that we would be entitled

10   to that would shed further light on the practices --

11             THE COURT:  So here's --

12             MS. WEISMANN:  -- of the White House.

13             THE COURT:  -- what I think needs to happen.  Given

14   that the parties have not consulted yet concerning this matter,

15   I think you-all should talk, figure out what the form of motion

16   should be, whether -- and that may have to do with whatever

17   facts you think you need and what the defendant is in a

18   position to provide to you quickly -- and propose a schedule

19   regarding further proceedings concerning the claims in this

20   case.

21             The Court is certainly willing to do so in an expedited

22   fashion, whether it is motion to dismiss and opposition or

23   cross-motions for summary judgment, but I think it would be

24   best if the two of you -- or the two sides were to confer and

25   then, let's say, by noon tomorrow file a proposed -- a joint

1    proposed schedule for further proceedings, if there is an

2    agreement.  If there's not an agreement, then you file

3    something that indicates what the two sides' positions are

4    on how we should proceed to litigate the claims in this

5    matter.

6         Does that make sense?

7              MS. WEISMANN:  Your Honor, this is Anne --

8              THE COURT:  Sorry.  Let me have Ms. Weismann.

9              MS. WEISMANN:  This is Anne Weismann.  Yes, that

10   makes sense to us, Your Honor.

11             THE COURT:  All right.  Ms. Shapiro?

12             MS. SHAPIRO:  Your Honor, I can tell you now that our

13   position is that the Court lacks subject-matter jurisdiction

14   over the entirety of this complaint.  So we would not agree to

15   any discovery.  We would want to move for a complete dismissal

16   under Rule 12.  So while I'm happy to confer with -- with

17   counsel, you know, that will be our position.  And I think we

18   would be entitled to make that motion.

19             THE COURT:  And you'd be willing -- and you'd be

20   available to do so by next Tuesday?

21             MS. SHAPIRO:  Correct.

22             THE COURT:  All right.  And that may well be how it

23   shakes out, but why don't I have you-all -- give you until

24   tomorrow to pin down your relevant submissions.  Maybe the

25   plaintiffs will agree we should do this threshold briefing on

1   subject-matter jurisdiction or they will have a list of facts

2   and evidence that they would like to procure; and then I will

3   resolve which set of -- which schedule we're going to follow in

4   terms of getting the claims resolved.

5         All right.  So I'll set noon tomorrow as a deadline for

6   a proposed schedule.  I understand defendants' position, and,

7   you know, you can begin your briefing as to your view as to how

8   this should play out, but I will decide once I get your

9   relevant positions and issue an order tomorrow after I reviewed

10  what you have put forward concerning how we're going to

11  proceed.  All right?

12             MS. SHAPIRO:  Thank you.

13             MS. WEISMANN:  Thank you, Your Honor.

14             THE COURT:  Anything else?

15        All right.  So I'll issue an order that moots the TRO

16  and that requires you to issue a proposed schedule by tomorrow

17  at noon.  Thank you.

18             MS. WEISMANN:  Your Honor, I'm sorry.  This is

19  Anne Weismann.  I just want to know in the order that you issue

20  on mootness, will you note that it is based on representations

21  of counsel with respect to document preservation?

22             THE COURT:  I will.

23             MS. WEISMANN:  Thank you, Your Honor.

24             THE COURT:  All right.  Thank you.  Have a good day.

25             (The proceedings concluded at 11:40 a.m.)

1          <u>CERTIFICATE OF OFFICIAL COURT REPORTER</u>

2

3        I, Nancy J. Meyer, Registered Diplomate Reporter,

4  Certified Realtime Reporter, do hereby certify that the above

5  and foregoing constitutes a true and accurate transcript of my

6  stenograph notes and is a full, true, and complete transcript

7  of the proceedings to the best of my ability.

8

9              Dated this 7th day of December, 2020.

10

11             /s/ Nancy J. Meyer
               Nancy J. Meyer
12           Official Court Reporter
               Registered Diplomate Reporter
13           Certified Realtime Reporter
               333 Constitution Avenue Northwest, Room 6509
14           Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25